UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT J. MISSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:20-CV-701-ERW |
| ) | |
| ANDREW M. SAUL, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This is an action under Title 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the applications of Robert J. Missey ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq*. Plaintiff has filed a brief in support of the Complaint (ECF No. 18) and Defendant has filed a brief in support of the Answer (ECF No. 22).

**I. Procedural and Factual History**

Plaintiff filed his application for DIB under Title II of the Social Security Act and an application for SSI under Title XVI of the Act on March 22, 2017. (Tr. 202, 204). Plaintiff claimed he became disabled on December 28, 2016 because of shortness of breath, fatigue, dizziness, weakness, congestive heart failure, memory loss, depression, swelling of extremities, high blood pressure, high cholesterol, and arthritis. (Tr. 109). Plaintiff was initially denied relief on June 27, 2017. (Tr. 108–19). At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on November 27, 2018, at which Plaintiff and a vocational

expert testified. (Tr. 69–107). The ALJ allowed Plaintiff's counsel to supplement the record following the hearing, and Plaintiff's counsel filed objections. (Tr. 319–43). By decision dated April 23, 2019, the ALJ found Plaintiff was not disabled. (Tr. 10–22). On April 1, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 1–6). Thus, the ALJ's decision stands as the final decision of the Commissioner.

In this action for judicial review, Plaintiff claims the ALJ's decision is not supported by substantial evidence on the record as a whole. Specifically, Plaintiff argues: (1) the ALJ erred in failing to properly inquire of the vocational witness after objections had been filed relative to the sufficiency of the vocational witness's testimony; and (2) the decision was not supported by substantial evidence as required because the findings of Plaintiff's residual functional capacity did not find support in medical evidence as required.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective briefing. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II. Legal Standard

To be eligible for disability insurance benefits under the Social Security Act, Plaintiff must prove he is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to

do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590–91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a).

Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his] ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001)).

Third, the claimant must establish his impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Before considering step four, the ALJ must determine the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20

3

C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *McCoy*, 648 F.3d at 611.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove he is disabled. *Brantley v. Colvin*, No. 4:10CV2184 HEA, 2013 WL 4007441, at *3 (E.D. Mo. Aug. 2, 2013) (citation omitted). At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Meyerpeter v. Astrue*, 902 F. Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

The Court must consider evidence which supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). The Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

### III. The ALJ's Decision

The ALJ's Decision conforms to the five-step process outlined above. The ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021, and he had not engaged in substantial gainful activity since December 28, 2016, the alleged onset date. (Tr. 12). The ALJ found Plaintiff's degenerative disc disease, obstructive sleep apnea, chronic obstructive pulmonary disease, congestive heart failure, morbid obesity, depression, and anxiety were severe impairments, but found these impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12-16). The ALJ found Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he should never climb ladders, ropes or scaffolds, but he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. He can occasionally work at unprotected heights, around moving mechanical parts, in weather, in humidity and wetness, in extreme cold and extreme heat, and be exposed to vibration and in dust, odors, fumes and pulmonary irritants. He is able to perform simple routine tasks in an environment with few changes in setting or duties and able to occasionally interact with supervisors and coworkers, but should have no interaction with the public.

(Tr. 16-20). In making this finding, the ALJ summarized the relevant medical records, as well as Plaintiff's own statements regarding his abilities, symptoms, and activities of daily living. While

the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, the ALJ further determined Plaintiff's statements about the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical and other evidence in the record. (Tr. 19).

The ALJ determined Plaintiff was unable to perform any of his past relevant work. (Tr. 20). However, based on his age, education, work experience, RFC, and VE testimony, the ALJ concluded Plaintiff could perform work existing in significant numbers in the national economy, and specifically, as a hand packager. (Tr. 21). The ALJ therefore found Plaintiff was not under a disability from December 28, 2016, the alleged onset date, through the date of the decision. (Tr. 22).

## IV. Discussion

In his brief to this Court, Plaintiff argues: (1) the ALJ erred in failing to properly inquire of the vocational witness after objections had been filed relative to the sufficiency of the vocational witness's testimony; and (2) the decision was not supported by substantial evidence as required because the findings of Plaintiff's residual functional capacity did not find support in medical evidence as required. The Court addresses each of Plaintiff's proffered issues below.

**1. Objections to Vocational Witness**

Plaintiff argues the ALJ's decision is not supported by substantial evidence at Step Five of the Sequential Evaluation Process. Specifically, Plaintiff contends the ALJ improperly relied on the VE's testimony because (1) neither the Dictionary of Occupational Titles ("DOT") and the Standard Characteristics of Occupations ("SCO") address "interactions with coworkers, supervisors, and the general public" and the VE testified the jobs identified fit within these interaction limits and (2) the source the VE used to determine the number of jobs available in the

6

national economy accounted for 35-hour weeks, not 40-hour weeks. Plaintiff further argues the ALJ improperly engaged in her own vocational analysis using unsupported conclusions based on irrelevant statistics and data from different years.

At the hearing before the ALJ, VE Thomas Upton, Ph.D., testified that a hypothetical person of Plaintiff's age, education, experience, and RFC could perform jobs in the national economy, including housekeeper, assembly press operator, and hand packager. (Tr. 98-100). The VE further testified that nationally there were 118,000 jobs with the hand packager classification, 194,000 jobs with the assembly press operator classification, and 440,000 jobs with the kitchen helper classification. (Tr. 99). When asked by the ALJ about the source he used for these numbers, the VE cited to the "US publishing, the first quarter of 2017" which is a Department of Labor publication which uses numbers from the Bureau of Census. (Tr. 102). When asked by the ALJ whether his testimony was based on the DOT itself or whether it was supplemented by his experience, education, and knowledge, the VE responded his testimony was based on all of those, the DOT, his experience, his education, and his knowledge. (Tr. 105). Dr. Upton's resume is included in the record to support his professional experience. (Tr. 307-18).

On December 18, 2018, Plaintiff submitted a post-hearing brief to the ALJ regarding the VE's testimony. In relevant part, Plaintiff argued:

> As part of both hypotheticals you included a restriction that the Claimant would be limited to only occasional interactions with co-workers, supervisors and the general public. No such restriction exists in either the DOT or the Standard Characteristics of Occupations. Claimant, therefore, submits that the vocation expert's testimony contains an unreconciled conflict with the Dictionary of Occupational Titles and under Social Security Ruling 00-4p is legally insufficient.

> In addition, the vocational expert at the hearing testified that the authority for the job number cited relied upon statistics from US Publishing Employment Statistics Quarterly from the first quarter 2017. US Publishing relied upon a definition of full-time work that is at 35 hours or more. The Social Security Regulations recognize that substantial gainful activity is defined as being capable of

7

performing work at 40 hours a week. The definitions of the Social Security
Administration, therefore, are no consistent with the definitions utilized in this
publication. As such, the numbers of jobs are not compatible with the definitions
utilized by the Social Security Administration and under Social Security 00-4p
that resource cannot be used.

Tr. 319.

The ALJ's opinion addressed and overruled Plaintiff's arguments in the post-hearing brief as follows:

> The claimant's representative lodged multiple objections to the vocational expert's testimony. (Hearing Transcript and Exhibit 15E). One objection is that the Residual Functional Capacity limits the hypothetical person to no more than occasional interactions with co-workers, and supervisors, and none with the public. The claimant's representative points out neither the Dictionary of Occupational Titles nor then [sic] Standard Characteristics of Occupations specifically addresses "interactions with co-workers, supervisors and the general public", or occasional interaction with supervisors and coworkers and no interaction with the public, and argued that this results in an unresolved conflict as per Social Security Ruling 00-4p. The vocational expert testified the jobs identified fit within these interaction limits. However, I also considered the requirements of the jobs provided by the vocational expert.
>
> In the Dictionary of Occupational Titles codes, the 5th digit of each code is the one that describes the job's level of interation with people. Each of the jobs identified by the vocational expert has a 5th digit of "8", which is the number that describes the least intense type of interpersonal functioning, or "taking instructions-helping". "Taking Instructions – Helping" is further defined as attending to the work assignment instructions or orders of supervisor, where no immediate response is required unless clarification is needed and "Helping" applies to "non-learning" helpers.
>
> Social Security Ruling 00-4p provides occupational evidence provided by the vocational expert should generally be consistent with the occupational information supplied by the Dictons of Occupational Titles. I am to elicit a reasonable explanation for apparent unresolved conflicts before relying upon the vocational expert's testimony. I asked the vocational expert if the jobs fit the interaction limits and the vocational expert gave an affirmative response. The vocational expert testified there is no conflict. I note that an area not specifically addressed does not constitute a "conflict." However, the vocational expert did identify Housekeeping/Cleaner as one job that fits within the Residual Functional Capacity. In the DOT, that job description includes "may render personal assistance to patrons." (Exhibit 15E/12) This job, therefore, *could* involve

8

> interaction with patrons, who could be identified as members of the public. I therefore rule it out.
>
> The claimant's representative objects to these job numbers on the ground that the vocational expert's methodology for determining numbers of jobs is not reliable. I overrule this objection. The vocational expert has professional knowledge and experience in job placement. The representative objected on the basis that the jobs included in the U.S. publishing numbers do not necessarily meet the requirement of full time work (40 hour work week) as defined in SSR 00-4p and SSR 96-8p. I reject this argument as well. The Bureau of Labor Statistics uses data from the National Compensation Survey (NCS) for certain analytical purposes. NCS data from March, 2013, indicate that 74% of all employees work full time jobs of 40 hours per week. The average workweek for all employees is 35, but this factors in the 26% of jobs that are considered part-time, working an average of 21 hours per week. This percentage does vary by industry. https://www.bls.gov/opub/mlr/2015/ article/the-relationship-between-access-to-benefits-and-weekly-work-hours.htm. If 74% of the jobs cited by the expert were 40 hour per week jobs, the number would be significant. While this report uses data from March 2013, I note that even if only *ten* percent of the jobs cited by the vocational expert – the remaining 118,000 production inspector jobs – were 40 hour per week jobs, the job numbers would still be significant.
>
> The vocational expert's testimony is otherwise consistent with the information contained in the Dictionary of Occupational Titles.

(Tr. 21-22).

Plaintiff argues the resources relied upon by the VE do not support the notion that substantial numbers of full-time jobs exist in the national economy. Plaintiff argues the VE's testimony was improperly based on census data which defines full-time work as 35 hours per work week while the Social Security Administration defines full-time work as 40 hours per week. In response, the Commissioner argues a VE is "neither required to articulate the percentage of jobs that were part-time or full-time, nor to describe labor market conditions beyond the data that was readily available," and a VE "may adjust his estimate of the number of existing jobs a claimant can perform." ECF No. 22 at 14.

The Eighth Circuit has explicitly stated there is no requirement for a VE to testify as to how many full-time jobs in a specific classification would be available for a plaintiff:

> Once it is established that the claimant cannot return to her previous occupation, the Commissioner bears the burden to show that a significant number of appropriate jobs exist for the claimant. 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997). The vocational expert identified several jobs that [claimant] could perform and testified that there were thousands of such jobs in Illinois and Iowa. [Claimant] argues that this testimony was insufficient because it did not specify how many of these jobs were full-time, rather than part- time work. The vocational expert was neither required to articulate the percentage of available jobs that were part-time or full-time, nor to describe labor market conditions beyond the data that were readily available. *Liskowitz v. Astrue*, 559 F.3d 736, 745 (7th Cir. 2009). Accordingly, the vocational expert's testimony constituted substantial evidence that there were jobs available for [claimant].

*Dipple v. Astrue*, 601 F.3d 833, 836 (8th Cir. 2010); *see also Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (where hypothetical includes impairments ALJ found credible and excluded those he discredited for legally sufficient reasons, VE's opinion that claimant could perform work existing in significant numbers in the national economy was substantial evidence supporting the ALJ's determination); *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005) ("The Commissioner may rely on a vocational expert's response to a properly formulated hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers."); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 450 n.6 (2nd Cir. 2012) (following the Eighth Circuit and declining "to create a *per se* rule prohibiting an ALJ from considering part-time positions" and rejecting the plaintiff's argument "that the ALJ erred by allowing the VE to provide employment numbers that might have included part-time positions"). In sum, a "VE is only required to state his opinion as to the number of jobs available in the national economy to a person with the applicant's RFC, age, work experience, and education." *Kelly v. Colvin*, No. 4:13 CV 1891-CDP, 2015 WL 94252, at *5 (E.D. Mo. Jan. 7, 2015) (citing *Whitehouse v. Sullivan*, 949 F.2d 1005, 1007 (8th Cir. 1991)).

The Social Security Administration addresses the use of vocational expert testimony in SSR 00-4p. *See* 2000 WL 1898704 (S.S.S. Dec. 4, 200). The Eighth Circuit has construed SSR 00-4p "as placing on the ALJ an affirmative responsibility to ask about 'any possible conflict' between VE evidence and the DOT, and to obtain an explanation for any such conflict, before relying on VE evidence to support a determination the claimant is not disabled." *Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014) (citing *Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014)). "[I]f substantial evidence supports the ALJ's phrasing of the hypothetical to the vocational expert, and there was no conflict between the vocational expert's testimony and the DOT, the ALJ properly relied on the testimony." *Courtney v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 1000, 1004 (8th Cir. 2018) (internal quotation and citation omitted). "[U]nless a VE's testimony appears to conflict with the DOT, there is no requirement that an ALJ inquire as to the precise basis for the expert's testimony regarding extra-DOT information." *Id.* at 1004.

Here, the ALJ asked the VE whether there were jobs in the national economy that a hypothetical individual of the Plaintiff's age, education, experience, and RFC could perform. Plaintiff does not take issue with the hypothetical asked. The VE answered in the affirmative and provided examples of three categories of jobs the hypothetical individual could perform as well as an estimate of how many of those jobs existed in the national economy. The VE confirmed his testimony was consistent with the DOT and supported by the VE's own experience and training. The VE is not required to provide the number of total jobs for a DOT job description that align with a plaintiff's specific RFC, and part-time jobs can be included within the total number of jobs provided. The ALJ properly relied on the VE's testimony that Plaintiff could perform jobs that generally existed in significant numbers in the national economy. 20 C.F.R. § 404.1566. The DOT is listed as an accepted source for national

employment information in the governing regulations. *See* 20 C.F.R. § 404.1566(d)(1). Thus, the ALJ appropriately found the VE's testimony to be consistent with the DOT, and the ALJ properly relied on the testimony.

Substantial evidence supports the ALJ's determination that the VE's testimony was consistent with the DOT. Additionally, the Court concludes the ALJ did not err in relying on the VE's testimony that a significant number of jobs were available to Plaintiff in the national economy, even though some unknown percentage were part-time jobs.

### 2. RFC Determination

Plaintiff claims the ALJ erred in his RFC assessment because the ALJ's findings of RFC find no support in some medical evidence. Specifically, Plaintiff argues the ALJ's decision does not explain its finding of RFC with light work.

A claimant's RFC is the most he can do, despite his physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. *Goff*, 421 F.3d at 793; *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). Accordingly, when determining a claimant's RFC, the ALJ must necessarily evaluate the consistency of the claimant's subjective complaints with the evidence of record. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). In addition, because a claimant's RFC is a medical question, "the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (internal quotation marks and citation omitted).

Some medical evidence must support the ALJ's RFC determination. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010); *Hutsell*, 259 F.3d at 711-12. "However, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Vossen*, 612 F.3d at 1016.

For purposes of social security analysis, a "symptom" is an individual's own description or statement of his physical or mental impairment(s). [1] SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). If a claimant makes statements about the intensity, persistence, and limiting effects of his symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record. *Id.* at *8.

When evaluating a claimant's subjective statements about symptoms, the ALJ must consider all evidence relating thereto, including the claimant's prior work record and third party observations as to his daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). If the ALJ finds the statements inconsistent with the evidence of record, he must make an express determination and detail specific reasons for the weight given the claimant's testimony. SSR 16-3p, 2017 WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012). Further, "'for a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.'" *Jones v.*

---

[1] The Social Security Administration issued a new ruling that eliminates the use of the term "credibility" when evaluating a claimant's subjective statements of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). The factors to be considered in evaluating a claimant's statements, however, remain the same. *See id.* at *13 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. §§ 404.1529, 416.929. This new ruling applies to final decisions of the Commissioner made on or after March 28, 2016.

*Astrue*, 619 F.3d 963, 969 (8th Cir. 2010) (quoting *Brown ex rel. Williams v. Barnhart,* 388 F.3d 1150, 1152 (8th Cir.2004) (internal quotations and citation omitted)).

Here, the ALJ found that Plaintiff's impairments did not meet or medically equal any listing. (Tr. 14). The ALJ also evaluated Plaintiff's statements regarding his symptoms and assessed Plaintiff's RFC. The ALJ addressed *Polaski* factors and made specific findings that Plaintiff's claimed symptoms were inconsistent with the record. (Tr. 16-20).

In sum, review of the record demonstrates the ALJ properly considered all the medical and nonmedical evidence in determining Plaintiff's RFC. The Court finds the ALJ thoroughly discussed all the evidence of record, addressed the consistency of the evidence in the record when viewed as a whole, and properly assessed Plaintiff's RFC based on the relevant, reliable evidence of record. *Crawford v. Berryhill*, No. 4:18 CV 408 CDP, 2019 WL 1326669, at *5 (E.D. Mo. Mar. 25, 2019). Therefore, the RFC is supported by some medical evidence, and the Court will not disturb the ALJ's determination. *Id*. Because these findings are supported by substantial evidence on the record as a whole, the Court must defer to the ALJ's determination. *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).

### IV. Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis*, 239 F.3d at 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently.

*Id.  See also Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

For the reasons set forth above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that Plaintiff was not disabled.  Therefore, the Court finds substantial evidence supports the ALJ's determination that Plaintiff was not disabled under the Social Security Act, and the Court affirms the decision of the Commissioner. *Davis,* 239 F.3d at 966.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Plaintiff Robert Missey's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

Dated this 29th day of June, 2021.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE